Case No. 19-1840, Todd Courser v. MI House of Representatives et al. Argument not to exceed 15 minutes per side. Mr. DiPerno, you may proceed for the appellant. Thank you. If it pleases the court. The argument in this case, what this case is really about is whether certain government employees are entitled to immunity for their conduct between a period of time starting January 2015 through September 2015. And we break these events down into two separate categories. The first category of events starts around January 1, 2015 and ends around August 7, 2015, which is the state that the date that a story broke in the Detroit News that exposed an affair between the plaintiff and another representative. And then there's a second scenario, which is between August 7, 2015 and September 11, 2015, which is the date the plaintiff was expelled from office. Now, under either scenario, it's the plaintiff's position that the defendants acted outside of their official capacity and are not entitled to any form of immunity. In the first scenario, the defendants, they ordered employees. Those employees were Keith Allard, Benjamin Graham, and Joshua Klein, who worked in the offices of plaintiffs. They ordered those employees to follow the plaintiff, stalk the plaintiff, dig up dirt on the plaintiff, take pictures, access his computers, his files, his emails, his voice recordings, including his personal computers and his personal files, all without his permission. They ordered them to plant listening devices in their cars, their vehicles, their offices, and in certain hotel rooms, and then to report back to the defendants in this case with the findings of that investigation. And then in the second scenario, which is between August 7, 2015 and September 11, the defendants used that information in a hearing to remove the plaintiff from office without fair and just treatment. Again, under either scenario, the defendant's conduct was unconstitutional, we believe. So, the defendant's plan in this case, evident by Kevin Trader, who was the Speaker of the House at the time, he made a statement where he said that it didn't matter, or it didn't make a difference, how we get the result of both of these members no longer being a member of the body. And we think that's telling, because it shows what their purpose was in the process. They wanted to remove these two members from the body. And it's also evident by the employees themselves that Defendant Conner was whitewashing the investigation. It's also very evident by the work history of these employees, again, Allard and Graham. One has to ask the question of why these defendants were kept, or why these employees were kept by the defendants as employees in the office as a plaintiff. By all accounts, they were not good employees. They were not trustworthy. They refused to follow directions. They didn't follow rules. They didn't show up on time. Can I ask you a question? So, Allard, Graham, and Conner are defendants in this particular case, right? They're in a different case. That's correct. So, this case really is about whether these five defendants were involved in some kind of conspiracy, I assume, to direct them to do this stuff. What are the specific facts that you've pled that would support the existence of that case? Specifically, we pled in the First Amendment complaint, Paragraphs 238, talked about the conspiracy. We talked about Paragraph 58, Paragraph 60, where they were other paragraphs. We talked about how there was whitewashing of the investigation. We talked about how they were bad employees. We talked about how they were definitely directed by the defendants in this case to conduct surveillance so that they could use that information. These defendants could use that information to remove the plaintiff from office. And that was their goal. That's very specifically, I think, the facts that were pled throughout the complaint. And under Rule 12B1... Is it enough? I'm struggling with whether it's enough to simply make an allegation that someone directed someone else to do something. Is that... I mean, I know you said that, but I don't... What else is there besides just this kind of conclusory allegation that they directed them? Well, we attached to the complaint many, many exhibits, including all of these text messages of going back between Allard and Graham and Klein. They were live texting the events that were happening throughout their lives. And in these text messages, they described in the allegation state that they described this conspiracy. And in some cases that they were directed to do... That's what I'm curious about, though, because I think... And I didn't... I'm not sure that I looked through every single one of them, but they seemed to me to be messages amongst the three of them. So, not defendants in this case, defendants in another case, talking amongst themselves about what they were doing. And it may well be that you have a good case against them. I don't know. But I'm not sure I saw a link in the text messages between these three defendants and the... What we're calling the RICO enterprise or a conspiracy or whatever you want to call it. Sure. Thank you. Under 12B1 or 12B6, the district court was required to take those allegations that we made in the complaint as true and construe the complaint in the light most favorable to the plaintiff. And we don't think the district court did this. We think the district court failed in that area. They didn't take the complaint as true. And if they did, it can't be said that defendants who engage in this type of conduct, who direct these employees to engage in this type of conduct during work hours when they're supposed to be at the office, answering phone calls, responding to constituents. It can't be said that all of the things that they did in this case would be entitled to immunity. If they did those things, they're not entitled to immunity. Is the argument... My understanding is the separate claims against Allard, Graham, and Klein have also been dismissed. Is that right? And they're separately on appeal? That's correct. Okay. So we couldn't let a conspiracy or RICO or something go forward without predicate acts, right? And if those claims are done, that would resolve those claims in this case, right? Well, are you saying that if you dismiss the RICO in this case, that they couldn't go forward in the other case? No, I'm saying that if in the other case, there are no claims on the merits that Graham, Allard, and Klein violated civil stalking, whatever it is, there would be no way for us to have predicate acts that would support a conspiracy or RICO, right? I mean, it would be odd for our case to go forward on a conspiracy if there were no underlying actions by Allard, Graham, and Klein, right? Well, I suppose that that would be true in the sense that Allard, and Graham, and Klein were the three people who were engaged in the acts that we alleged. They were the ones actually doing the civil stalking. They were the ones actually interfering or gaining access to the computers and the emails and voice messages. They're the ones that hacked into those computer systems. They did those acts. So is that what you're asking? Right. Yes. Your allegation is that Allard, Graham, and Klein were bad guys, and they did all of these things that violated computer fraud, eavesdropping, civil stalking, all of it. But if your client doesn't have any actionable claim against those three for those things because of statute of limitations, immunity, whatever it would be, I'm not saying anything about the merits of it. I'm just saying that if it turns out that there's nothing actionable there, there can't be a conspiracy or RICO that would involve the five house defendants. That's what I'm getting at. And Judge Quist has already dismissed all of the claims against Allard, Graham, and Klein, right? I mean, I'm assuming you got a different appeal. But sitting here today, they're dismissed, right? That's correct. They are. Yes. So yeah, you're right. Our argument is that it shouldn't have been dismissed. They were the ones that actually took those actions and engaged in the stalking and the violations that we allege for the computer fraud. So yeah. All right. Thank you. All right, Mr. Gordon, you may proceed. I'd like to start off a sworn statement by the appellant that he made to the House of as follows. In any event, I would just say that, yeah, I think it has been an absolutely fair process. And I am very thankful for you guys and the effort you have put in over your summer. I know Hassan has put in a whole bunch of work and walked through all of that. And I know Brock has as well. I would say it's been an absolutely fair process. Hassan that he's referring to is defendant Hassan Bedouin. And Brock is Judge Schwartzel, defendant represented by Mr. Evans. That was made on September 9. On September 15, Mr. Courser voluntarily resigned from the Michigan House of Representatives. However, contrary to a statement that everything was fair and above board, he filed multiple cases in the federal courts and in the state courts. And we've detailed those in our brief. To some extent, the complaint, the amended complaint, the 11th hour dismissal to avoid a motion for summary in the original case and subsequent case, again, amended the complaint at the 11th hour to avoid a motion for summary. Finally, we were able to pin it down with the instant motion. The gravamen of this complaint, and I think you've hit on this, Judge, is that Speaker Cotter, the Republican members of the Select Committee, legislative staffers, the Michigan Attorney General, the Michigan State Police, the Radisson Hotel, Ms. Gamrat's husband, and the Detroit News all conspired to remove Courser from office in order to more easily pass legislation he opposed. The crucial required showing that the alleged conspiracists had any agreement and were linked in the ways that Courser argues is absent. There are no facts to support this. There's no evidence. There's no well-pledged allegation to support it. As recognized by Judge Quist, there are only conclusory allegations and statements of law except for those allegations that you've recognized against Allard and his two companions. Those are the only factual allegations in the case. There is no link. There's no fact. There's no well-pledged statement that links them with the House defendants, the people I represent in this matter. What about the allegation that Allard, or I can't remember the specific one, that they report back that they were asked by specific individuals to check up on what was going on? Why is that not enough for at least some indicia of a conspiracy or that they were at least being directed by some of these House defendants? There's no allegation that they were asked to report back on the so-called affair. There's no allegation that they were told to stalk, to eavesdrop, to hack computers, to do any of that. These people were employees of the House of Representatives and they were employees of the House of Representatives dismissed their employment. They wouldn't do that to co-conspirators in a case like that. The underlying theory that all of this was done so that the conspirators could force Mr. Courser to support legislation is belied by the fact that at that time, the Michigan House of Representatives had an overwhelming Republican majority. Mr. Courser's vote was not needed one way or the other. That's an underlying theory of this case and it's just inoperable. It's not true. Judge Quist noted that now this complaint, it's 18 counts, 148 pages exclusive of the hundreds of pages of exhibits, 676 paragraphs. Judge Quist noted that specifically with regard to the so-called conspiracy allegations, and much of the rest of the complaints constituted group pleading. Group pleading prevented the judge, as he noted, from determining who did what, which defendant supposedly took what action. Except the only specifics are that all allegations of privacy violations, eavesdropping, surveillance, and wiretapping are directed at people, as you've noted, judge not part of these proceedings. They aren't directed at and they don't name any of the House defendants. Now, 11 of the 18 counts are barred by or are 11th Amendment immunity, legislative immunity, governmental immunity, or qualified immunity. The action of determining the qualifications of a member of the House pursuant to the Michigan Constitution is certainly a governmental function. These people were all acting in their official capacity at all times that they took any of the actions complained of, any of the actions complained of that are supported by solid pleadings and non-conclusory unsupportable allegations. The statements that are made that there was a conspiracy, they were directed to do all of this, there's nothing to support that, it's specious, it's nonsense in the context of this case. And even where the counts of the complaint are not allegedly, or even where the judge found immunity barred the complaint, statute of limitations barred three of the counts, Judge Quist meticulously went through each count and pointed out how it failed to state a cause of action that would survive a 12B6 analysis. Now, his characterization of the so-called conspiracy claim, that's the underlying foundation for most of the other claims. I'm curious about something. So, Howard Graham and Klein were just that was just kind of rogue here and they, for their own benefit, there was nobody else that was involved or asking them to do any of these things, or these things never happened. I guess, I don't know what's the theory on why they're not liable in the other cases. Well, if you look at some of the emails and so on that you looked at, there are emails back and forth between these people and Ms. Gamran's husband. And they may have been working to do some of these things, or may not have, but it was certainly without any involvement of the House defendants. So, to the extent that they engaged in any of this, it was certainly on their own and not subject to House oversight or direction. Now, Judge Quist said that the conspiracy allegation is a prime example of a tactic known as group pleading, was bereft of factual content, consists entirely of legal conclusions, was implausible and absurd on its face. Although they claim facts that they claim support, I'm sorry, they appellant a conspiracy, none of them are directed at the House defendants. They're Allard and Graham and Klein. So, on addressing whether this is properly a 12B6 or Rule 56 motion, this court has ruled that attachments to a complaint, documents referenced in the complaint and public records are admissible in a 12B6 motion. That's exactly what happened here. There's no basis to conclude that it's not properly a 12B6. I see my times running. The amended complaint fails to say any claim against the appellees, specifically the House defendants. It was properly dismissed. All accounts against the staff and the legislature where they were acting in their official capacities are barred by Eleventh Amendment immunity. The entire complaint as to the House of Representatives is barred by Eleventh Amendment immunity. Most of the other claims are barred by governmental immunity, qualified immunity and statutes of limitations. Even where there is a conceivable cause of action, Judge Quist went through and meticulously detailed why the plaintiff failed to state a cause of action because of the group pleadings and non-specific allegations and these fanciful, non-supportable allegations of this global conspiracy somehow against Mr. Courser that just didn't exist. Allegations of that are conclusory in nature. They're non-supported by any substantive factual allegations. Just saying so doesn't make it so. There has to be more behind that. They didn't reach that level. I would respectfully request this court affirm the lower court's decision and uphold Judge Quist. Thank you. Thank you. All right. Mr. Evans. Thank you, Your Honor. I'm with the appellees, Barack Schwartzel and Norm. Sorry, neither Mr. Schwartzel or Mr. Sari were members of the House. Mr. Sari was the Chief of Staff for the Speaker of the House, Kevin Cotter, but only until August 1st, 2015. At that point in time, then-Governor Rick Schneider appointed Mr. Sari to the Public Service Commission for the State of Michigan. That came effective immediately on August 2nd under the Michigan Constitution, and he was no longer associated with the House of Representatives at all. Nonetheless, the allegations in the First Amendment complaint, among other things, allege that Mr. Sari actually was one of the authors and published the House Business Office's report, when, in fact, he was a witness in there, and he has his statement recorded that is an attachment to the First Amendment complaint. He was simply uninvolved after August 1st, 2015. Mr. Schwartzel was then General Counsel for the House of Representatives. He's now a judge in the Michigan Court of Appeals. Are your clients differently situated in terms of the defenses that you're raising? Are you saying that they do not get the benefit of some of these immunities, that you have to rely on the 12B-6, or are they the defense of the defenses? Well, because they're not House members, they're slightly different than the elected officials that Mr. Gordon represents, but they're in the exact same position as who was the Assistant General Counsel of the House of Representatives during this time. They are staff, employees, counsel, and so our arguments, with one small exception, are duplicative of Mr. Gordon's arguments, and for the same reasons would apply. The only thing is that we have immunity as a defense, but that has little consequence given the other immunities that are available and applicable that Judge Quist, in his opinion, found applied in the situation, but that would be one distinction between police Mr. Sarek and the other defendants. The other things I just want to make sure that we remember, it was pointed out in both briefs of the appellees. August 23rd, 2013, Mr. Courser pleaded no contest to the criminal charge of willful neglect of duty by a public officer that all stemmed out of the situations that he is now suing over in multiple lawsuits. On September 23rd, 2019, a state court in Michigan entered a judgment of sentence and commitment to jail on that count for Mr. Sarek. There is no allegation whatsoever that either Mr. Schwartzel or Mr. Sarek directed Allard, Graham, and Klein to do anything Mr. Sarek was Chief of Staff for the House, for the Speaker of the House, and Allard, Graham, and Klein did approach him with workplace concerns. This is no different than any other to who they're supposed to about their concerns. They had complaints that, and as to Mr. Courser, that Mr. Courser were asking them to do personal errands during the day, ask them to conduct political activities out of the office. What do we do with the allegations that Schwartzel and Sarek regularly met with or had meetings with Allard, Klein, and Graham? And there is that statement. I can't put my finger on it, but somebody said, keep me posted or something like that. I don't know. But is that not at least some indicia that they were involved with Allard, Klein, and Graham and what they were up to? Well, what they're up to is going to be the issue. What it is, is that we have employees in Allard, Graham, and Klein who raise workplace concerns. I'm unhappy with what my boss is telling me to do. And so, yes, they met, just like any other workplace. And they were told from Mr. Sam's point of, hey, keep me informed on what's going on. If you still have problems and you still have concerns, I want to hear about them. There is zero allegation that has anything to do that they directed Allard, Graham, or Klein to do anything unlawful. And in fact, what Mr. Cipriano admitted in his opening arguments to you is that it was Allard, Graham, and Klein were the only individuals that allegedly did anything unlawful from the standpoint of how they collected information. Mr. Evans, your time has expired, so you need to wrap it up. You have purchased current to report back. Thank you. Thank you. All right, Mr. Cipriano. Here we go. We know that they met because Allard and Graham texted about meeting with that they met and they were instructed that in order to get Courser in line, defendants directed Allard, Graham, and Klein to gather information. Surveillance began in 59. Allard, Graham, and Klein reported back to defendants in paragraph 60. Paragraph 81, in paragraph 81, defendants instructed the employees to gain unauthorized access to the computer passwords. And then you have, you do have that text where Brock Schwartzel says, keep me posted. And then you have Allard respond back where he says, the first thing we need to do is get them impeached. There of course was meetings about this. There of course were meetings about what they were going to do to Allard or to Courser and Gamrat because they were viewed as people who were not conforming within the caucus. Mr. Gordon stated that as soon as Courser and Gamrat brought issues to the house business office, brought issues about the work concerns that the were terminated. That's not true. In fact, there were many concerns brought forward to the house business office by Courser and Gamrat that were not addressed. Then those issues continued on, such as the pornographic pictures that we advised the court about that Allard and Graham would leave around the office. They were not terminated immediately. They were not terminated until well down the road. So that's not a factual statement. The statement made that votes were not needed is not accurate. Also, as we described in the complaint, as soon as Courser was removed, the house was able to pass legislation by the two votes that they needed by removing Courser and Graham. It's well known. The case law is very clear that a plaintiff is not required to prove the specific portion for which each defendant is responsible. Such a requirement would allow defendants to mask the allocation of the proceeds to avoid forfeiting them altogether. That's the accurate. We don't have to show what every person did in the conspiracy to bring a conspiracy claim because you often don't know who's involved in what and who's doing what. In fact, some people can come into the conspiracy later on. They can leave early. They don't have to know what everyone is doing throughout the entire process. That's really the essence of RICO. When you consider what Allard and Graham and Klein were asked to do, which is planned in the complaint and which facts should have been accepted as true by the district court, when you think of all those allegations as to what those Allard and Graham actually did and Klein actually did from January 1 through August 7, before there was ever any knowledge of that affair, before this story broke the media, you can't say that anything that was done directing those employees to do that stuff is part of any legislative process. It's not part of speech and debate. It's not introducing legislation on the floor. It's not talking about legislation. This was simply a process where the Speaker of the House wanted to dig up dirt on a representative in order to bring him in line with the caucus. And he did. Mr. Colonel, your time has expired. Okay. Well, I thank you. And for those reasons, we'd request that the court remand this back to the district court. Any other questions for me? We appreciate the argument that all of you have given and we'll consider the case carefully. Thank you. Thank you very much. Thank you. Thank you very much.